IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| B-O-F CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 17-cv-07129 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| AMF SALES & ASSOCIATES and ALEX FORMENTO, | ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff B-O-F Corporation ("B-O-F"), a manufacturer of commercial shelving systems, alleges that Defendant AMF Sales & Associates ("AMF"), a distributor, manufacturer's representative group, and former regional representative for B-O-F, breached the contract between the parties. B-O-F further alleges that Defendant Alex Formento, AMF's President, tortiously interfered with contracts between B-O-F and four of its other distributors. Now before the Court is Defendants' motion to dismiss the Amended Complaint (Dkt. No. 11), in which Defendants argue that this Court lacks personal jurisdiction over Formento and that B-O-F's claims against both Defendants fail as a matter of law. As explained below, the motion to dismiss is granted in part and denied in part.

**BACKGROUND**

For the purposes of Defendants' motion to dismiss, this Court accepts as true the following well-pleaded allegations in B-O-F's Amended Complaint and draws all reasonable

inferences from those facts in B-O-F's favor. *See, e.g.*, *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010).[1]

B-O-F, an Illinois corporation with its principal place of business in Aurora, Illinois, manufactures, sells, and distributes proprietary gravity flow shelving systems and other related products for use in retail stores. (Am. Compl. ¶¶ 1, 6, Dkt. No. 2.) B-O-F contracts with various regional representatives to sell and install its products in retail stores across the United States. (*Id.* ¶ 7.) AMF, a Pennsylvania corporation with its principal place of business in Langhorne, Pennsylvania, is a manufacturer's representative group that sells refrigeration and store fixtures to supermarkets and retail stores. (*Id.* ¶¶ 2, 8.) Formento, AMF's President, is a citizen of Pennsylvania who resides in Langhorne. (*Id.* ¶¶ 3, 8, Ex. 3; Formento Aff. ¶ 2, Dkt. No. 11-2.)

In November 2015, B-O-F and AMF entered into a Manufacturer's Representative Agreement (the "Agreement"). (Am. Compl. ¶ 9.) The Agreement required AMF to promote and sell B-O-F's products on an exclusive basis to supermarkets, dealers, and convenience stores in New York, Pennsylvania, and New Jersey, as well as to certain companies (the "Territory"). (*Id.*) Just over a year into the Agreement, in February 2017, B-O-F notified AMF that it was terminating the Agreement because AMF had failed to use its best efforts to sell and promote its products in the Territory as required by the Agreement. (*Id.* ¶¶ 10–12.) In the termination letter, B-O-F stated that it had not seen "any growth" within AMF's Territory for the past "several years." (Am. Compl. Ex. 2.)

---

[1] For purposes of the motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court may consider documents attached to the Amended Complaint. *See Reger*, 592 F.3d at 764. For purposes of the motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), this Court may consider affidavits submitted by the parties. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003).

After termination, B-O-F discovered further breaches of the Agreement. (Am. Compl. ¶ 14.)[2] First, AMF breached the contract by failing immediately to return to B-O-F any catalogues, brochures, price lists, and other promotional and engineering materials that AMF possessed relating to B-O-F's products. (*Id.* ¶ 13.) Second, AMF and Formento violated the Agreement by distributing and representing goods that competed with B-O-F's products. (*Id.* ¶ 15.) Finally, AMF and Formento exploited B-O-F's confidential information and the information contained in the promotional and engineering materials that AMF failed to return. (*Id.* ¶ 16.) Specifically, B-O-F claims that Formento provided a sample of B-O-F's product, known as the "Milk Moover," to CSF International ("CSF"), another manufacturer. (*Id.* ¶ 17.) As a direct consequence, CSF now manufactures a knockoff version of and direct competitor to the Milk Moover. (*Id.* ¶¶ 17–19.)

Months after termination of the contract, in August 2017, Formento emailed four of B-O-F's other regional sales representatives. (*Id.* ¶ 20; Am. Compl. Ex. 3.) B-O-F alleges that, in sending the emails, Formento was acting on his own behalf and for his own gain. (Am. Compl. ¶ 8.) The emails Formento sent to each representative are all almost exactly the same, each stating in relevant part:

> As you know, we were dropped by BOF a few months ago. We have partnered up with a company that can make the same type of product . . . .
>
> Advantages here are that it is about 30% less expensive and pays a 10% commission. They also make the Anthony gravity shelving knockoff, again for less money and more commission. If anything you can use this to go back to BOF for more commissions!
> . . . .

---

[2] Some of the allegations regarding breaches during the term of the Agreement are listed under the heading "AMF's and Formento's Conduct Subsequent to Termination." The Court reads the complaint as a whole and does not find the heading to change the substance of the allegations. *See Black v. Lane*, 22. F3d 1395, 1400 (7th Cir. 1994).

(Am. Compl. Ex. 3.) B-O-F had valid contracts with these four other representatives, and Formento knew about the contracts because Formento, through AMF, was a regional representative for B-O-F. (Am. Compl. ¶¶ 34–35.) B-O-F alleges that, as a result of Formento's emails, these representatives have breached or will breach their contracts with B-O-F. (*Id.* ¶ 37.)

## DISCUSSION

B-O-F filed this action invoking this Court's diversity jurisdiction and the choice-of-venue provision in the Agreement. Now before the Court is Formento's motion to dismiss the claim against him for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2), and for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure12(b)(6). In addition, AMF has moved to dismiss the claim against it pursuant to Rule 12(b)(6) for failure to state a claim.

### I. Personal Jurisdiction

Turning first to Formento's personal jurisdiction argument, a plaintiff need not plead facts alleging personal jurisdiction in the complaint. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). "However, once the defendant moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Id.* When the issue of jurisdiction is raised by a motion to dismiss and decided on the basis of written materials rather than an evidentiary hearing, as is the case here, the plaintiff need only make a *prima facie* showing of jurisdiction. *See Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). The parties may submit affidavits in support of their arguments and any conflict in the facts stated in the affidavits are resolved in the plaintiff's favor. *Purdue Research*, 338 F.3d at 782.

A district court sitting in diversity has personal jurisdiction only if a court of the state in which it sits would have such jurisdiction. *Citadel Grp Ltd. v. Wash. Reg'l Med. Ctr.*, 536 F.3d 757, 760 (7th Cir. 2008). The exercise of jurisdiction over the defendant must comport with the forum state's personal jurisdiction statute and the requirements of the Fourteenth Amendment's Due Process Clause. *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012). The Illinois long-arm statute permits the exercise of jurisdiction to the full extent permitted by the Fourteenth Amendment, "so here the state statutory and federal constitutional inquiries merge." *Tamburo*, 601 F.3d at 700. Therefore, the key question is whether the defendant has sufficient "minimum contacts" with Illinois such that he "should reasonably anticipate being haled into court there." *Id.* at 701.

A court may have general or specific personal jurisdiction over a defendant. B-O-F does not specify which type of jurisdiction it claims this Court has over Formento, and Formento presents an argument against each.

### A. General Jurisdiction

An individual with such continuous and systematic contacts with a state that he is essentially "at home" may be subject to general jurisdiction there. *See Kipp v. Ski Enter. Corp. of Wis.*, 783 F.3d 695, 697–98 (7th Cir. 2015); *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). The standard for general jurisdiction is high, "because the consequences can be severe: if a defendant is subject to general jurisdiction in a state, then [he] may be called into court there to answer for any alleged wrong, committed in any place, no matter how unrelated to the defendant's contacts with the forum." *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 426 (7th Cir. 2010).

In this case, Formento's contacts with Illinois do not satisfy the demanding standard for general jurisdiction. Formento is a citizen of Pennsylvania and resides there. Moreover, Formento has never lived in Illinois, does not own any real estate in Illinois, has no family residing in Illinois, and does not have any bank accounts or financial holdings in Illinois. (Formento Aff. ¶ 4.) In his affidavit, the President of B-O-F, Jamie Knorring, does not dispute any of those facts. Instead, Knorring states that Formento, in connection with the Agreement, has directed numerous emails and telephone calls to him and others at B-O-F in Illinois, traveled to Illinois on several occasions to discuss the Agreement, and attended an industry trade show in Illinois relating to the business of the Agreement. (Knorring Aff. ¶¶ 6–9, Pl.'s Resp. to Defs.' Mot. to Dismiss Ex. 1, Dkt. No. 18.)

While Knorring states that Formento has traveled to Illinois and contacted people at B-O-F in Illinois, those connections were all in contemplation or furtherance of the Agreement and are not so substantial as to render Formento essentially "at home" in Illinois such that he should be sued here on any matter. *See Tamburo*, 601 F.3d at 701 ("[I]solated or sporadic contacts—such as occasional visits to the forum state—are insufficient for general jurisdiction."); *see also Heritage Vintage Invs., LLC v. KMO Dev. Grp., Inc.*, No. 15 C 5582, 2015 WL 12838162 at *3 (N.D. Ill. Dec. 11, 2105) ("Although the [defendant's] contacts show [he] travels to Illinois regularly, they are not 'substantial' enough to render [him] at home in Illinois…"). This Court therefore cannot exercise general personal jurisdiction over Formento.

B.   **Specific Jurisdiction**

For specific personal jurisdiction, the defendant's contacts with the forum state must relate to the lawsuit at hand. *Advanced Tactical Ordinance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014). In the context of a tort claim, the exercise of specific

personal jurisdiction is appropriate when: (1) the defendant has purposefully directed his activities at the forum state, (2) the alleged injury arises out of the defendant's forum-related activities, and (3) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Tamburo*, 601 F.3d at 702.

      For the first requirement—that the defendant must have purposefully directed his activities at Illinois—the Seventh Circuit has articulated three different factors that must be satisfied: (a) intentional conduct, (b) expressly aimed at the forum state, (c) with the defendant's knowledge that the plaintiff would be injured in the forum state. *Tamburo*, 601 F.3d at 703. In the Amended Complaint, B-O-F sufficiently alleges that Formento engaged in intentional conduct by sending emails to B-O-F's distributors with the knowledge that B-O-F, an Illinois corporation, would feel the effects, or be injured, in Illinois.

      As to the second factor, the express-aiming requirement is not satisfied just because the plaintiff is injured in the forum state. *See Tamburo*, 601 F.3d at 706 (requiring a "forum-state injury ***and*** 'something more'" before specific jurisdiction can be properly exercised) (emphasis in original). Moreover, "there can be no doubt that 'the plaintiff cannot be the only link between the defendant and the forum.'" *Advanced Tactical*, 751 F.3d at 802 (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)).

      The Amended Complaint here alleges that prior to his emails to B-O-F's distributor-representatives encouraging them to switch to CSF's knockoff version of B-O-F's Milk Moover product, Formento actually provided a sample of the Milk Moover to CFS to encourage manufacture of the knockoff. This conduct formed the basis of the alleged tortious interference, as it allowed Formento to then email the distributor-representatives and solicit their business away from B-O-F to CSF. Formento was able to procure B-O-F's Milk Moover and provide a

sample to CSF because of the Agreement between B-O-F and AMF—an agreement signed by Formento as President of AMF, and requiring the application of Illinois law and an Illinois venue for resolution of disputes arising under it. Moreover, once Formento's conduct resulted in CSF's creation of the Milk Moover knockoff, Formento specifically targeted companies that had a business relationship with B-O-F with the purpose of encouraging those companies to stop using B-O-F's product and use the knockoff instead. Although Formento's emails may have been directed at entities located outside of Illinois, the Amended Complaint suggests that his ultimate purpose was to get those representatives to leave B-O-F and work with him instead. The Court finds that Formento's alleged conduct—viewed as a whole and including the earlier alleged conduct that enabled him to ask B-O-F's distributor-representatives to stop doing business with B-O-F—was sufficiently aimed at Illinois with the purpose of causing injury there. *See Tamburo*, 601 F.3d at 707 (citing *Dudnikov v. Chalk & Vermilion Fine Arts*, 514 F.3d 1063, 1075 (10th Cir. 2008)) (analogizing the defendant's intent to "something like a bank shot in basketball," where the player intends to hit the backboard but in furtherance of the ultimate goal or "express aim" of making a basket).

The Court next considers whether B-O-F's alleged injury "arises out of" Formento's forum-related activities. Courts of appeal are divided on whether the defendant's contacts with the forum must be the "but-for" cause of the injury, the proximate cause, or some standard in between. *See Felland*, 682 F.3d at 677 (citing *Tamburo*, 601 F.3d at 709 (collecting cases)). The Seventh Circuit has not expressly established the appropriate standard but has suggested that mere "but-for" cause is insufficient. *Id.* at 677–78. For example, in *Felland*, the Seventh Circuit held that the requirement was satisfied when the defendant's contacts with the forum state "were not just incidental but [were] central to the…course of conduct alleged in the complaint." *Id.* at

677. Here, Formento's contacts with Illinois—including (1) his procurement and provision of the Milk Moover to a competing manufacturer under the guise of the Illinois-based Agreement that Formento signed on behalf of AMF, and (2) his emails to the distributor-representatives expressly encouraging them to stop doing business with B-O-F in Illinois and instead switch to the knockoff product—were central to the alleged tortious interference and resulting injury to B-O-F. The Court therefore finds that the complaint sufficiently alleges that B-O-F's injury "arises out of" Formento's contacts with Illinois.

Finally, the Court must consider whether its exercise of personal jurisdiction over Formento would offend traditional notions of fair play and substantial justice. *See Tamburo*, 601 F.3d at 709. Several factors are relevant to this inquiry, including: "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Tamburo*, 601 F.3d at 709 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

Out-of-state defendants always face a burden when defending an action in another state, and there is no suggestion that Formento's hardship would be any greater than that routinely tolerated by courts exercising jurisdiction over nonresidents. *See Felland*, 682 F.3d at 677. In addition, "Illinois has a strong interest in providing a forum for its residents and businesses to seek redress for tort injuries suffered within the state and inflicted by out-of-state actors." *Tamburo*, 601 F.3d at 709. Moreover, while B-O-F could sue Formento in his home state of Pennsylvania, B-O-F is bound by the Agreement to bring its suit against AMF in Illinois and thus would need to bring two substantially-overlapping lawsuits in different states just to give

Formento the benefit of defending in his home state. A single suit in Illinois provides the most efficient resolution of B-O-F's claims. *See id.* Accordingly, this Court's exercise of specific personal jurisdiction over Formento comports with traditional notions of fair play and substantial justice.

Ultimately, this Court finds that B-O-F has alleged a *prima facie* case of specific personal jurisdiction over Formento and his motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) is denied.

### II.     Sufficiency of Pleading

The Court next considers AMF's and Formento's requests that it dismiss the claims against them for failure to state a claim. Federal Rule of Civil Procedure 8(a) requires a complaint to contain "a short and plain statement of the claim" in order to give the defendant fair notice of the claim and the ground upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a Rule 12(b)(6) motion, a complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads enough factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the complaint does not need to include detailed factual allegations, there "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Legal conclusions or formulaic recitations of the law are insufficient. *Id.*

A. **Breach of Contract**

To state a claim for breach of contract against AMF under Illinois law,[3] B-O-F must allege: (1) the existence of a valid and enforceable contract, (2) that B-O-F substantially performed, (3) breach of the contract by AMF, and (4) resultant damages. *See Reger Dev.*, 592 F.3d at 764 (quoting *W.W. Vincent & Co. v. First Colony Life Ins. Co.*, 814 N.E.2d 960, 967 (Ill. App. Ct. 2004)). AMF claims that B-O-F has failed to allege adequately the third and fourth elements: breach and damages.

At issue are certain provisions of the Agreement requiring: (1) that AMF use its "best efforts" in the sale and promotion of B-O-F's products in the Territory, (2) that AMF shall not manufacture, distribute, or represent any goods that compete with B-O-F's products, (3) that AMF shall not disclose any confidential information to any entity regarding B-O-F's products, and (4) that upon termination of the Agreement, AMF shall immediately return any and all catalogues, price lists, brochures, samples, and other promotional and engineering items related to B-O-F's products. (Am. Compl. ¶ 10.) In seeking dismissal of the breach of contract claim, AMF argues that B-O-F has failed to allege with any specificity how AMF failed to use its best efforts in the sale and promotion of B-O-F's products, how it breached the confidentiality agreement, and how it engaged in conflicting transactions. But B-O-F has alleged that AMF failed to return the promotional and engineering materials that were in AMF's possession and used those materials, and others, to exploit B-O-F's information. For example, B-O-F alleged that Formento, as a representative of AMF, provided a sample of the Milk Moover to CSF for the purpose of creating a knockoff that AMF could then promote. Further, it is reasonable to infer

---

[3] The Agreement contains a choice-of-law provision selecting Illinois as the governing law. Neither party disputes that Illinois substantive law applies to both the breach of contract and tortious interference claims.

from the allegations of AMF's misuse of B-O-F's information and promotion of competing products that AMF failed to use its best efforts in breach of the Agreement.

With respect to damages, B-O-F alleges that it has suffered damages by way of lost sales due to AMF's breach of the Agreement. *See Unilog Content Sols., LLC v. Thanx Media, Inc.*, No. 15 C 5899, 2017 WL 1427045, at *2 (N.D. Ill. Apr. 20, 2017). AMF's argument that B-O-F does not provide sufficient data to support its calculation of damages is unavailing at this stage. *See id.* ("To the extent that [the defendant] asserts that there is not sufficient evidence of damages or that all of the specific facts relating to such damages have not been presented, such an argument is premature."). B-O-F has alleged sufficient factual matter to give AMF notice of the claim against it and raise B-O-F's right to relief above the speculative level. Therefore, AMF's motion to dismiss B-O-F's breach of contract claim is denied.

### B.  Tortious Interference with Contract

To state a claim for tortious interference with contract against Formento under Illinois law, B-O-F must allege: (1) the existence of a valid and enforceable contract between B-O-F and a third party, (2) Formento's awareness of the contract, (3) Formento's intentional and unjustified inducement of a breach of the contract, (4) a subsequent breach of the contract caused by Formento's wrongful conduct, and (5) damages. *See Echo, Inc. v. Timberland Machs. & Irrigation, Inc.*, 661 F.3d 959, 968 (7th Cir. 2011) (applying Illinois law).

As stated above, B-O-F has sufficiently alleged the existence of valid contracts between B-O-F and the third-party distributor-representatives and that Formento was aware of those contracts. The third element—Formento's intentional and unjustified inducement of a breach of the contract—"requires more than knowledge that one's conduct is substantially certain to result in one party breaking its contract with another." *See Empire Indus. Inc. v. Winslyn Indus., LLC*,

No. 18 C 698, 2018 WL 3068425, at *8 (N.D. Ill. June 21, 2018). That is, Formento must engage in some active persuasion that goes beyond merely providing information in a passive way. *See id.* Given B-O-F's allegations regarding Formento providing the Milk Moover to a competing manufacturer and his emails to B-O-F's distributor-representatives informing them of CSF's competing product, a reasonable inference can be made that Formento intended not merely to provide information passively but to induce the distributor-representatives to stop working with B-O-F.

Nonetheless, B-O-F has failed to allege sufficiently the required element of an actual breach of contract by B-O-F's distributor-representatives. *See Miller UK Ltd. v. Caterpillar Inc.*, No. 10-cv-03770, 2015 WL 6407223, at *6 (N.D. Ill. Oct. 21, 2015) (noting that this element of the claim requires an actual breach and not just the mere possibility of one). B-O-F's allegation that Formento's actions "have or will cause" [sic] a breach of contract, without more, is insufficient. (Am. Compl. ¶ 37.) If a distributor-representative has in fact breached its contract, B-O-F fails to allege any facts to that effect, such as which representative out of the four breached its contract and how. Similarly, B-O-F's allegations of damages are also insufficient. B-O-F states that it "*will be* damaged"—not that it has suffered damages as a result of Formento's actions. (*Id.* ¶ 38 (emphasis added).) Because B-O-F has not sufficiently alleged that a breach and damages have occurred as a result of Formento's interference, B-O-F has not stated a claim for tortious interference with contract. Accordingly, Formento's motion to dismiss is granted with respect to this claim and B-O-F's tortious interference with contract claim is dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendants' motion to dismiss. (Dkt. No. 11.) The motion is granted with respect to B-O-F's claim against Formento for tortious interference with contract—while the Court finds that it has personal jurisdiction over Formento, the Amended Complaint fails to state a claim for tortious interference with contract and that claim is dismissed without prejudice. The motion is denied with respect to the claim against AMF for breach of contract.

ENTERED:

Dated: September 19, 2018

Andrea R. Wood
United States District Judge